(92 Misc. Rep. 104)

## In re GUMBINNER'S ESTATE.

(Surrogate's Court, New York County.    October 18, 1915.)

1. TAXATION ☞865—INHERITANCE TAX—ASSETS—GOOD WILL OF BUSINESS.

Where a manufacturing business, conducted by a decedent under the same name for more than 18 years, and which apparently had the same principal office during that time, showed profits after deducting a reasonable sum for decedent's services and for interest on the capital invested, it had a good will that constituted an asset of the estate, though the decedent owned no patents or trade-marks in connection with the business, and did not advertise in trade publications or daily newspapers, but depended on traveling salesmen for the sale of his products.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1680; Dec. Dig. ☞865.]

2. TAXATION ☞895—INHERITANCE TAX — APPRAISEMENT — GOOD WILL OF BUSINESS.

In valuing, for the purpose of assessing an inheritance tax, the good will of a business conducted by the decedent, if an amount described as "income from investments" was income from the investment of any part of the capital employed in the business, it should be deducted from the interest allowed on the capital in ascertaining the net profits.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. ☞895.]

3. TAXATION ☞895—INHERITANCE TAX — APPRAISEMENT — GOOD WILL OF BUSINESS.

In valuing the good will of a business, though the books showed no allowance for the depreciation of the stock inventoried at the end of each year, no such deduction could be made from the gross profits, without allowing for such deduction in calculating the profit and loss at the end of the year, since, if the deduction were made in the inventoried value of the stock each year, it would necessarily be reflected in the profit and loss account of the succeeding year, and would not substantially alter the ratio between capital and profit and loss as shown on the books.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. ☞895.]

4. TAXATION ☞895—INHERITANCE TAX — APPRAISEMENT — GOOD WILL OF BUSINESS.

In valuing the good will of a business, a reasonable allowance for depreciation of machinery and fixtures should be deducted from the gross profits.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. ☞895.]

5. TAXATION ☞895—INHERITANCE TAX — APPRAISEMENT — GOOD WILL OF BUSINESS.

The amounts drawn by the owner of the business for his personal account should also be regarded as the value of his services to the business, and deducted from the gross profits, in the absence of evidence that they were excessive.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. ☞895.]

6. TAXATION ☞895—INHERITANCE TAX — APPRAISEMENT—GOOD WILL OF BUSINESS.

In assessing an inheritance tax, the average net profits of a business conducted by the decedent for five years preceding his death, ascertained by deducting from the gross profits interest on the capital invested, the value of the decedent's services to the business, and a reasonable amount

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

for depreciation in machinery and fixtures, multiplied by two, should be taken as the value of the good will.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. 895.]

7. TAXATION 868—INHERITANCE TAX—ASSETS—FIXTURES.

Machinery in a factory conducted by a decedent in another state was properly included in the assets of an estate, in assessing the inheritance tax, where it constituted no part of the building, and was not erected in such a manner that its removal would materially alter or deface the building.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1685–1687; Dec. Dig. 868.]

8. TAXATION 886½—INHERITANCE TAX—RATE OF TAXATION.

Under Tax Law (Consol. Laws c. 60), § 230, providing, relative to the transfer tax, that when property is transferred in trust or otherwise, and the rights, interest, or estates of the transferees are dependent upon contingencies or conditions whereby they may be defeated, extended, or abridged, a tax shall be imposed upon the transfer at the highest rate which, on the happening of any of such contingencies or conditions, would be possible, and shall be due and payable forthwith, where a testator directed that the income from his residuary estate be paid to his widow and daughters during their respective lives, and upon the death of the survivor divided among the surviving issue of a daughter, and, in the event of the daughter dying without issue, such remainder to be divided into 60 equal parts, and paid to various legatees, the remainder should be divided into 60 parts, and each legacy taxed as if it were bequeathed to an individual of the 5 per cent. class.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. 886½.]

9. TAXATION 876—INHERITANCE TAX—CONTINGENCIES—TIME OF ASSESSMENT.

That part of the remainder which would go to exempt corporations in the contingency mentioned was not presently subject to taxation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1693–1699; Dec. Dig. 876.]

Proceeding to assess a transfer tax on the estate of Paul Gumbinner. From an order of the appraiser, the executors appeal. Reversed, and report remitted to the appraiser for further proceedings.

Albert Erdman, of New York City (M. R. Ryttenberg, of New York City, of counsel), for appellants.

Lafayette B. Gleason, of New York City (Schuyler C. Carlton and Alexander Otis, both of New York City, of counsel), for state comptroller.

FOWLER, S. [1] The executors of decedent's estate appeal from the order assessing a transfer tax upon the estate, and allege that the appraiser's valuation of the business conducted by the decedent prior to his death was excessive. The decedent was the sole owner of the business conducted by him under the name of Paul Gumbinner Company. The appraiser estimated the value of the business at $286,067.-14. His report, however, does not contain an itemized statement showing the value which he placed upon the various items constituting the assets of the business. The evidence before him showed that the market value of the merchandise on hand at the date of decedent's death

was 66 per cent. of its cost price; that the value of the machinery in the factories was $7,835.10, although it was carried on the books at about $66,000; and that the value of the entire business, exclusive of good will, was $239,821.04. Much evidence was submitted by the executors to show that the business had no good will. While it had been established by the decedent in 1892 for the manufacture of silken neckwear, veilings, etc., he owned no patents or trade-marks in connection with it. He did not advertise in trade publications or the daily newspapers, but depended upon traveling salesmen for the sale of his manufactured products. While these facts should be taken into consideration in estimating the value of the good will, they do not necessarily prove that there was no good will. The business was conducted under the same name for more than 18 years, and, so far as the evidence discloses, had the same principal office during that time. If, therefore, it showed profits, after deducting a reasonable sum for the services of the decedent and for interest on the capital invested, it had a good will that constituted an asset of the estate.

[2] The executors have submitted a statement showing the gross profits for the years 1903 to 1909, inclusive. This statement shows an average deduction of about $3,000 as "income from investments." There is no explanation of the nature of these investments. If it is income from the investment of any part of the capital employed in the business, it should be deducted from the interest allowed on the capital in ascertaining the net profits for the purpose of determining the value of the good will.

[3-5] In the statement referred to the executors also claim a deduction of $15,000 each year from the gross profits for depreciation of buildings, fixtures, machinery, and stock. It appears that the decedent in his annual statements did not make any allowance for depreciation of buildings, machinery, etc. There is no evidence in the appraiser's report as to the character of the buildings used by the decedent as factories, but the increase in the value of the ground is usually equivalent to any depreciation in the value of a brick or stone structure erected upon it. The decedent's books do not show any allowance for depreciation of the stock inventoried at the end of each year. This, however, is merely a detail of bookkeeping, as, if the deduction for depreciation were made in the inventoried value of the stock each year, such deduction would necessarily be reflected in the profit and loss account of the succeeding year, and would not substantially alter the ratio between capital and profit and loss as shown on the books of the company.

As the executors ask for a deduction for depreciation of merchandise inventoried, without allowing for such deduction in calculating profit and loss at the end of the year, their contention in this respect should not be allowed. They should, however, be allowed a reasonable deduction for depreciation of machinery and fixtures. These become worn and obsolete in the course of 15 or 20 years, and a fund should be set aside for their replacement. As the evidence shows that most of the machinery installed by the decedent in his factories in 1892 was still in operation at the time of his death, although in a worn and dilapidated condition, I think a reasonable deduction for depreciation upon such

machinery would be a percentage which would produce a fund sufficient to replace them in 18 years. For this purpose a depreciation of 6 per cent. is liberal, and should be allowed by the appraiser.

[6] The drawings of the decedent for his personal account should, in the absence of evidence that they were excessive, be regarded as the value of his services to the business, and should also be deducted in arriving at the net profits. There should also be deducted interest on the capital employed. As these items are contained in the statement submitted to the appraiser by the executors, it is only necessary to modify that statement by reducing their estimate of depreciation, namely, $15,000, to the figure represented by the deduction of 6 per cent. upon the value of the machinery in both factories. The average net profits for the five years preceding the date of decedent's death, ascertained as here indicated and multiplied by two, will represent the value of the good will.

[7] The appraiser was correct in including in the assets of decedent's estate the machinery in the factory at Emaus, Pa., as the evidence showed that this machinery did not constitute part of the building, and that it was not erected in such a manner that its removal would materially alter or deface the buildings.

[8, 9] The executors also appeal from that part of the order entered upon appraiser's report which assessed a tax upon the remainder after the life estates of decedent's widow and daughter, as if such remainder passed to one beneficiary of the 5 per cent. class. The testator directed that the income from his residuary estate be paid to his widow and daughters during their respective lives, and upon the death of the survivor that the principal be divided among the surviving issue of the daughter per stirpes; in the event of the daughter dying without leaving issue, such remainder to be divided into 60 equal parts and paid to the various legatees mentioned in the will.

Section 230 of the Tax Law provides that when property is transferred in trust, and the interests of the transferees are dependent upon conditions whereby they may be defeated or abridged, a tax shall be imposed upon the transfer at the highest rate which, upon the happening of any of the contingencies or conditions, would be possible. In Matter of Zborowski, 213 N. Y. 109, 107 N. E. 44, it was held that such interests are presently taxable. The contingency which would defeat the vesting in possession of the interests bequeathed to the issue of the daughter would be the death of the daughter without issue, and the highest rate which could be imposed upon the remainder would be the rate at which it would be assessed in such a contingency. Therefore the remainder should be divided into 60 parts, and each legacy taxed as if it were bequeathed to an individual of the 5 per cent. class. That part of the remainder which would go to exempt corporations in the contingency mentioned is not now subject to taxation.

The order fixing tax will be reversed, and the appraiser's report remitted to him for the purpose of ascertaining the value of the good will as herein indicated. The order to be entered upon his report should conform to this decision in regard to the taxation of the remainder.